Get started, it is case number 24-20426, Hayes v. City of Houston, and I am not going to attempt to pronounce your name, but you can introduce yourself when you come up. Yeah, please do. It's Hauthausen. Say it one more time? Hauthausen. Okay, Hauthausen. Yes, sir. Okay. Good morning. May it please the court. We would ask this court to reverse the dismissal of appellant's excessive force claims against Officer Doss and Officer Barnes at police, and remand this case to the district court. My name is Alexander Hauthausen, and I am here on behalf of my client, Jonathan Hayes, appellant in this case before the court. We are here today to ask this court to help us in holding law enforcement accountable at a time in this country when accountability is what we need most. When a person at- Please, please. Don't give us a political speech. Oh, I apologize, Your Honor. Don't tell us what accountability is needed at this time in our country. Just argue your case. Yes, Your Honor. When a person acts under color of law, their actions must be examined, and if their conduct harms or hurts a citizen, we would ask that they be held accountable. With that being said, we do not seek to undermine qualified immunity. The issue I'd like to discuss during my time with the court is what pleading standard a plaintiff should be required to meet to overcome a 12B6 motion. Mr. Hauthausen, you mentioned in your opening the excessive force claim, but your brief talks about a delayed medical care claim as well. It does, yes, Judge. Let me ask you about that, and I'll give you, of course, you'll have time to talk about the excessive force claim. As I read your first amendment complaint, I don't see a claim made for delayed medical care, so was there a claim of that nature, which seems distinct from an excessive force claim? Yes, Judge. To the extent that I didn't do a good job explaining it . . . Well, I'm not saying that. I'm just saying I don't see the claim made. Sure. We meant to, and so I think the facts in the complaint established that we were talking about a delay in medical care. We mentioned in several parts of the complaint that they had taken Mr. Hayes to the jail, even though he was making complaints about how his shoulder had come out of the socket, and they delayed it, and they made fun of him. In the video evidence, you can see that they're making fun of him in the jail and poking fun at him and saying things like that he's faking it. That is something that we talked about in that complaint, Your Honor. Well, I've read the complaint. Let me ask you this. When the parties were arguing about the motions to dismiss, I looked at your opposition. I think you have multiple oppositions to the motions to dismiss. Were you arguing about the dismissal of a failure, a delayed medical claim? Because I just don't see it, but maybe you can point out to me where in your opposition. In other words, it seems like the parties were talking about excessive force and Manel and that sort of thing. I just didn't see a discussion of a delayed medical claim. To the extent that we tried to put the facts in there, Judge, I didn't make a separate claim section in the amended complaint. Well, I'm not talking about the complaint. I'm talking about when you're arguing in front of the judge or in pleadings in front of the judge, you shouldn't dismiss the excessive force. I see a lot of discussion about excessive force and Graham and those sorts of things, but I just didn't see any discussion of a delayed medical claim, which again seems distinct to me. So was that just not briefed below?  I think that that's fair to say that we didn't brief it, and to the extent that I didn't do that appropriately, that is my fault. Well, I'm not trying to assess blame. I'm just trying to figure out what was argued below because it's just to assess what we need to decide here. I think in our brief to this Court, the original brief that we filed, Your Honor, we mentioned that we did file a claim under the Due Process Clause of the 14th Amendment. I saw that. Which I believe encapsulates a delay in medical care. Okay. Well, I mean, in theory it could. It just doesn't say that. Yes. Assuming you did make that claim, and your client, Hayes, was taken directly to the booking rather than to the medical center, as I understand it, and then another officer who is not on appeal took him to the medical center, what was the lapse of time between when he got to the booking center and when he was taken to the medical center? Don't tell me anything other than what you either say in your pleading, in your complaint, or is shown on the video. I don't think that we specifically identified how long the delay in time was, Your Honor, in the complaint. I do think based upon the videos, there is some time that lapses. In several of the videos, you'll see the police officers stop at a gas station along the way to the joint processing center, and I don't know off the top of my head the amount of time. And I'd be happy to- Your client eventually received medical treatment. And I guess I'm wondering, what is your theory of harm from the delay itself? I mean, is there any medical evidence showing aggravation of the injury during that time? Your Honor, as we delineated in the complaint, and I believe in some of our briefing about the 12B6 motion, we did put an x-ray in the evidence of, as you can see, the shoulder joint or the ball of the humerus bone is actually outside of the joint. And so I think the evidence is there that, as well, Your Honor, we talked about Mr. Hayes, over the course of a year afterwards, was constantly having the shoulder joint coming out of place. And so they did put it back into place, but because of the force that was used to pull it out of place, he continued to have problems with that shoulder joint. When he would just be doing normal daily activities, the shoulder would come out of place. Going back to Judge Duncan's original question, can you point me to the exact paragraphs in your complaint that you contend adequately lead deliberate indifference? I believe that there is a claims life cause of action at the end of the complaint where we talk about the violations of due process under the 14th Amendment. And I think that a delay in medical care claim would be encapsulated in that, Your Honor. Let me help you out a little bit with that, because I think what Judge Willett may be referring to are factual allegations and not legal allegations. So in paragraph 35, well, in paragraph 33, you say they did nothing of the sort, meaning take him to get medical care, instead took him to the joint processing center. And then in paragraph 35, and this is my question, and I promised last question on this, so you can get to excessive force, once the officers took plaintiff to the Harris County Joint Processing Center and the handcuffs were taken off, plaintiff started to notice the extreme nature of the injuries that these officers had inflicted on him. He noticed that his right shoulder just dropped and was in excruciating pain. So is it a fair inference from that that he realized what had happened at the joint processing center? Yes, that is fair. Yes. So it is not from the arrest, but from his arrival at the joint processing center. Okay. Yes, Your Honor. That is correct. Now, you cited us to, you just spoke about an x-ray, and I'm not aware that an x-ray was attached to your complaint. It is actually embedded in the text, Your Honor. The x-ray is embedded in the text? Yes. It's in the middle of the page and in the complaint. And it's also in our brief, and I can find the page in our brief as well.  All right. I don't remember what page it is, but I've got the complaint right here. It's on page, it's on ROA 145. You've got an x-ray in there? Yes. On the excessive force, so this is yet another case, I mean, we have many of these cases where there are allegations about the force, and then there's video. So I've looked at the video, as we always do. To my eyes, I can see everything that happened during this arrest, you know, from the moment of encounter, even before the encounter, to the interactions, to the handcuffing and everything. So react to this. And I'm not, I'm certainly not doubting the injury. What I see in this interaction is a fairly standard arrest where, you know, there's some going back and forth between the officers, there's some yelling, there's a handcuff. And then I do hear the complaint, my arm, and then the officers take him out of the car and give him additional handcuffs so that his arms are not so close together. So I mean, do you disagree that that's what I'm going to go on when I'm thinking about an excessive force allegation? Because I can see it with my own eyes. I don't disagree, and I think it is at that moment in time when they're bending him over and they're pulling his arms backwards, upwards. You can see the officer start pulling on his right arm and he pulls upwards. They're doing that to satisfy his request that they loosen the handcuffs. They said, here, bend over so we can get this, so we can double handcuff you so you're not going to have this problem. Yes, Judge. And he doesn't say a word when they bend him over, ask him to bend over. Yes, Judge. And I think we talked about that in the complaint, a person who goes through something like that, they're being arrested. There's a lot of adrenaline that's going on, and he didn't realize that the injury was so severe until they got to the joint processing center. And so at that moment, you'll see the officer raising the shoulder joint to a point that it shouldn't be going to. And it is at that point when I respectfully disagree, Your Honor. He doesn't say a word when they put him in the car, like, boy, you hurt my shoulder. He doesn't say a word. They just put him in the car. They were very, very courteous to him. I was struck by how courteous they were. I guess just following up on that, I'm not doubting the injury, but when I look at . . . I mean, we have so many of these cases where there's sort of a scuffle or a takedown. There's some resistance, and then the takedown and the allegation is, well, you used too much force in taking me down or in catching me. And this one, it seems a little bit odd in how not . . . and just sort of how normal it is. It's like, well, okay, the guy obviously didn't like being arrested. What is the nature of the excessive force allegation here? Again, I'm not doubting the shoulder dislocation. I'm just . . . what is it that the . . . I always ask myself, well, okay, in this situation, what do the officers do that they should not have done? I think . . . and we quoted this in our brief, Your Honor, is the Aguirre case where it talks about how . . . and additionally, the Bartlett case, how force should be proportional. And so . . . Well, sure. But those . . . I'll just tell you right now, I'm familiar . . . very familiar with both of those cases. The Bartlett is just a savage beating of someone who's not resisting, and the Aguirre case is leaving somebody in a maximal restraint position for so long that he suffocates, right? So that just seems different from this case. The part that I think kind of shines light on all of this is the conversations by the officers later on in the videos when they're at the hospital. If Your Honor would turn, there's a video, number 25. We cited it in the brief. If you'll look at video 25, the time stamps are 23 minutes to 24 minutes, as well as 27 minutes to 27 and a half. You'll hear the officers talking about what they think happened. And so, while they're talking about it, they discuss that, oh, I think I did it when I put him in the car and I did that maneuver. And so, I think that that kind of shines light on it. They also talk about how they think that they used too much force. You can clearly hear that being uttered on the video evidence that's before the court. Okay. What is your best response to the argument that officers are certainly entitled to maintain control of your client's arms while they're adjusting the handcuffs? You don't dispute that, right? No, Judge. I think the problem is the maneuver that they did. You can stand up and have someone pull the handcuffs off and do double cuffs. You don't need to be bent over into the car. Now, where is that in the complaint or in any evidence the district judge viewed? That would be in video one, Your Honor. You're giving us your view of what, if you do this, you don't do that. You need to stick to what's either in your complaint or in the videos, and I think that's all that was considered in what became a summary judgment. Now, you're giving us your opinion on what causes harm. In the complaint, and I believe in the 12B6 briefing, we did discuss about this maneuver, Judge, and we talked about . . . and I think maybe the reference didn't make sense, but we talked about how it was like a jockey holding reins, and he pulled up on his arms. And so I think that that is discussed in our complaint, Judge. But you're telling us about you don't need to go to that extreme, et cetera. You just stick to the evidence. This is summary judgment. Well, that's something I would like to discuss with the court, Judge. I think . . . I'm sorry, Judge. All right. Let's just follow up on that. Let's assume for purpose of argument that there is a violation here. There is an excessive force. Excessive force was used. We accept that from the complaint. Where is the clearly established law, though, that would put these officers on notice that doing that, sort of this maneuver here to lengthen the handcuffs, is . . . that's clearly established law. You know, that's a violation. What's your best case or cases for that proposition? The first thing, Judge, is that I think that the Santander decision kind of should make this process a little bit easier for plaintiffs. And so the Santander . . . Well, I mean, I hear what you're saying. I've read your brief, and I know you're running out of time, but we routinely ask for a case or cases that would have put officers on notice that, nope, don't do that, right? So what are those cases that I should look at? Go ahead. May I answer? Yeah. I think the cases that we've cited in our brief, Judge, there's Aguirre. I think the proposition of law is that it has long been clearly established that when a suspect is not resisting, it is unreasonable for an officer to apply unnecessary injurious force against a restrained individual, even if the person had previously not followed commands. It is clearly established that exerting significant continued force on a person's back while that person is in a face-down prone position after being subdued and or incapacitated constitutes excessive force. I think that it is clearly established in this district, at least since 2014 or 2013, Judge, that after a person is restrained, a police officer shouldn't do, should not be using any force at all because that would be excessive, and that's the clearly established problem. Thank you. Thank you very much. We'll see you back on rebuttal. Ms. Petty, welcome. Good morning. Thank you, Your Honor. May it please the Court. Let me start with the delayed medical care claim because there really isn't one here. It's not listed among his 14th Amendment claims. He specifically lists them in the complaint. Delayed medical care is not one. Instead, he's rolled it into the excessive force claim. In fact, at page 49 of his brief, where he sort of isolates the paragraph in his complaint that he thinks satisfies Santander and all of the relevant standards, he talks about not taking him to the emergency room. So there was no separate claim. The Court did, however, address medical treatment in its discussion of violation of Houston policies. Is it disputed or undisputed that the officers delayed medical attention for hours after observing the injury? What do the facts show? The facts in the video, I think, are unambiguous. They are, and I think Judge Barksdale and Judge Duncan have pointed to them in a very important way. What the video shows, that before or as the cuffs were being put on the first time, he said, hey, bro, my arm. At that point, the cuffs were put on, he didn't say, I'm injured, I need to go to the hospital. At that point, nothing more was said until he said, my arm, and that's when he asked to have the cuffs loosened. They were loosened. After that, Judge Barksdale is absolutely correct, he didn't say a word. Instead, when he got to intake, he said, you know, I didn't really realize it, but now the cuffs are off, my arm's hanging, I think I'm injured. At that point, it appears that he was taken to the on-site medical team to assess him and then was sent to the hospital. Your Honor, I don't know, because that's not been an issue that he raised. I would say that the entire discussion of delayed medical treatment here and what he says in his briefing is that the officer should have known he was injured from the time they put him in the handcuffs or shortly thereafter, and they should have taken him to the ER then. He does not make any allegation of delayed medical treatment after he got to intake, and I think that's very important here. The Supreme Court dismissed the medical care claim as simply unpleaded. Correct. I just wonder, if the complaint were maybe cursory and artful, however you want to characterize it, even if the complaint were all that, why wouldn't the factual allegations at least trigger an obligation to analyze deliberate indifference as opposed to dismissing it outright? Again, Your Honor, Houston would be entitled to some notice of what the claim is. For example, now, there's discussion of was it delay after he reached intake. That was never part of the case, so the only thing that one can glean from the facts is the initial arrest to intake, and at that point, you had the video that very clearly showed that he didn't say word one about his injuries, and so it would require that the officers be effectively clairvoyant, that they know he was injured before the plaintiff himself knew he was injured. So that's, I think that's the basis on which the court could dismiss as opposed to engage in some sort of analysis, because otherwise, you're really putting a burden on the police that they really can't sustain. I was just struck by the fact that in the briefing on the motion to dismiss, I don't see any discussion of a delayed medical care claim. No. I went looking for it because I thought, well, there's not much here, so let me go see what they said below about it, and I don't see anything. There's absolutely nothing. To the extent there is something in the briefing, it is basically that the officer should have taken him, or should have called an ambulance at the scene, frankly, and had him taken to the hospital at that point, but there's no suggestion of delay. It's more of a suggestion of deprivation, but again, if there's no pleadings, if there's no basis or grounding for the court or the litigants, frankly, to challenge a claim, then that's a problem. At best, he said that they violated the policy which requires them when there's an injury to call an ambulance. That's the only thing that was in the pleadings. Let me then go back to his qualified immunity claim and the Bartlett type of claims, and unfortunately, he didn't get into the tinkering with Bartlett that he wants to do, but essentially what he's asking this court to do is to . . .   In the room. We would never think about tinkering with that case. Well, the court really isn't in a position to do that because the Ashcraft v. Al-Kid case from the U.S. Supreme Court . . . excuse me, I'm thinking of your old employer . . . basically imposes the requirement that Judge Duncan has reminded him of, and that is that you've got to have some precedent. What they say is we do not require a case directly on point, but existing precedent must place the statutory or constitutional questions beyond debate. And I think that his presentation here today indicates that he doesn't have any cases or any authority that would touch upon any kind of excessive force claim for what happened here. I think Judge Duncan is absolutely correct. This was a pretty vanilla arrest. This wasn't a situation where they were trying to jerk the person around a carport or twist it. As in the Glenn case, this was a case where they put him in handcuffs uneventfully. He said they were too tight, they widened them, he didn't get any resistance from them, and then he said nothing until he got to intake. These cases often turn, it seems, on how the right is kind of framed and defined. And the Supreme Court has warned against kind of being hyper-pedantic or specific. What is the city's preferred framing? Is it just the right not to be injured during a handcuff adjustment? Is it something broader? Your Honor, I'm not really in a position to articulate the right that he says was violated here. He has done that for the court. And I think it's his articulation that's really the appropriate one to look at. And his is the use of a technique of pulling up on an already detained person's arms to the degree that plaintiff's shoulder popped out of a socket and then not taking the plaintiff immediately to the emergency room is a definition of excessive force. So that's his definition of excessive force. I don't think that there is any, we've certainly not found any precedent that says that, number one, that that's the case, but number two, as I've articulated, that isn't what happened and it's belied very strongly by the video evidence. You wouldn't really object to, if the framing were you can't inflict significant injurious force on a subdued, restrained, posing no threat suspect. Your Honor, I think if the facts bore that out, I think we would agree with that. But the facts don't bear that out. As I indicated, and I think it's very important for the court, this is not a situation where he was subdued and then he says, oh my gosh, you hurt my arm. This is a situation where he talked about his arm being hurt either as he was being subdued, as he was being put in the handcuffs or before, and that's what the video evidence that the plaintiff himself put in evidence shows. So that fact pattern and that right doesn't apply here. You know, we speak of invited error. We also speak of no good deed goes unpunished. And the officers were simply doing what he asked them to do, clearly on the video, and they were being very, very courteous. So it's not like they were shoving him around or anything. They were doing exactly what he requested them to do, and he didn't say anything about you're doing it wrong. Correctly. Correct, Your Honor. I think it's highly likely that in his agitated state that obviously somebody would be when he was arrested, he thought that his problem was that the handcuffs were too tight when in fact he had an injury to his arm that had occurred at some earlier point. But I think the court is correct on that. But I think that it is very important to note that, you know, kind of the timing of that. I will speak to Bartlett a little bit, because I think that I want to make sure that the Approvingly?  Well, partially approvingly. We don't have any problem with the exception. We just don't think it applies here. Moreover, he's really forfeited the use of this exception because it was never raised in the district court. It was never preserved. When you say exception, what do you mean? That this is a rare possibility and an obvious case, so obvious that you don't have to have. Because essentially, again, what he's asking this court to do is basically apply the Graham factors or apply, frankly, raise the IPSA standard to excessive force, which the court in Aguirre, on which he relies, says really is only appropriate where you have a Bartlett obvious case. And those cases are ones in which the court has met, which a plaintiff has met. What this court had said in the Roe v. Johnson City and the Jimmerson case last year, that it is a sky-high burden where the situation is so egregious, the situation that you talked about, about a person being left in a prone position to . . . Well, the relevance of that case, I think the Aguirre case, because it goes to the position that the person was in. Correct. And if we're going to draw anything from that case, it's that sort of maximum restraint position. Correct. And he tries to rely on those kind of George Floyd-type situations, but those really don't have any relevance here, because what he's talking about, if correct, and again, I don't think the video bears that out, is some kind of manipulation. There's not a technique. There certainly is nothing that was taught at the police academy. In fact, he's dropped his claims against the city of Houston. But what the Bartlett exception applies to are things like sexual abuse of a detainee in one case, where at least four . . . I think Bartlett, there were two or three, as many as five officers that beat the man and kicked the man to death while others watched. There's even a situation in which an officer shot without warning a suspect who was pointing a gun at his own head and didn't even know the officer was there. But they . . . It's not close. It's close. Correct. But, you know, a situation where an officer shot a suspect merely who had fled was not an obvious violation. So the standard has to be exceptionally high. It is not even close in this situation. So really, Bartlett can't save him. I think the last thing is that if the court is going to tinker around the edges of Bartlett, and again, I see no reason to, because he's not really put it before the court here, then it does have to be reminded of its obligation to follow U.S. Supreme Court decisions. If the court has no further questions, thank you. Thank you. May I please have the court again? I think where I left off, Judge, is about Rule 8. And so I'd just like to talk a little bit about Rule 8 and the Santander decision. As you all are well aware, Rule 8 says that a complaint must contain a short and plain statement of the claim showing that the pleader . . . But this is on summary judgment now. Well, that's what I'd like to talk about, Judge. I think . . . I don't know that anybody's arguing it's not summary judgment. The judge went outside the complaint, and he looked at the videos. That converted it into a summary judgment. And I think . . . and I understand that, Judge. I just think that the Santander decision talks about how a plaintiff doesn't have to cite to every decisional law that exists to overcome a 12B6 motion. I think sometimes in 1983 litigation that 12B6 and summary judgment get conflated. And so at the 12B6 standard, it's just minimum pleading standards. It's just short and plain statement of the claim. And so to require plaintiffs in every case at the 12B6 stage to file briefs and to understand every single decision of statutory and constitutional value in our jurisprudence is in opposite to the holdings in the Santander case. And the Santander case cites a Supreme Court of the United States case, the Elder v. Holloway case. And that one even says that a plaintiff doesn't have to cite to every statutory law, case law, everything in our jurisprudence. And . . . You would agree, wouldn't you, that you have to properly present your claims? Yes. Raise your claims. Yes. I do agree with that, Judge. But I think that there's a minimum standard that needs to be surpassed for a 12B6. 12B6 is just for meritless claims. 12B6 is failure to state a claim upon which relief can be granted. And so I don't believe that Mr. Hayes' case, that we don't have a claim. I think that we, at the very bare minimum, surpass 12B6 on his excessive force claim against the officers. And that's all I'm here today to ask from this Court, is to reverse that decision. Right. But once qualified immunity is raised, then it is your obligation to point to case law that shows that the alleged use of force was clearly unconstitutional. Isn't that right? I don't disagree with you, Judge. I just think that the Santander decision talks about how the plaintiffs don't need to cite to every single case that exists. That if there are things that are clearly established, and they're clearly established, and if the facts in the complaint meet that minimum standard, then they should surpass a 12B6 motion. In our case, in our— But we can't describe clearly established law as the right to be free from excessive force. No, I don't disagree. Right. We have to be more specific than that. Yeah. I agree with you, Judge. But Rule 8 says that it should be short and plain. And so, to the extent that our complaint does that, I think that the excessive force claims should survive and should be reversed. But why, in the light of—I mean, you and I are just passing each other on the street. What I'm saying is, when Judge Hanen took into account the videos, it changed it from a 12B6 to a summary judgment. And that's what we're reviewing here today. Is there a genuine dispute of material fact? And I understand that, Judge. And I think that, in his order, he cites the Bartlett case. And the Bartlett case is about summary judgment. But in our case, we didn't have a chance to do discovery. We didn't have a chance to—it was a 12B6 motion. And I believe that the video evidence establishes that there was excessive force. And so, the Santander decision talks about how plaintiffs don't have to have a cornucopia of case law in their briefing, because that would cause our system to be flooded with information that doesn't need to be there. 12B6 is a low standard. And so, I think that there needs to be a distinction made between what is enough for 12B6 and what is enough for summary judgment. Well, when he based his decision on looking at the videos, and did you file a motion to reconsider, based on you looked at the videos, but you've changed this whole ballgame, we get a chance to conduct discovery. Did you file anything like that with him? No, Judge. We just took notice of appeal and brought it to this Court. Okay. Thank you. Thank you. Thank you, Judges. I appreciate both sides. And the case is submitted. And with that, that wraps up our week. So, the Court will stand adjourned.